IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

ORRICK WILSON,
        Plaintiff,

vs.                                Case No. 3:09cv310/RV/CJK

DR. ROGER BROWNE, et al.,
        Defendants.

_____

## REPORT AND RECOMMENDATION

This prisoner civil rights case is before the Court upon plaintiff's and defendant Tennenbaum's cross-motions for summary judgment. Upon review of the motions, responses, summary judgment evidence and relevant legal authorities, the undersigned recommends that plaintiff's motion (doc. 159) be denied and that defendant Tennenbaum's motion (doc. 156) be granted.

## BACKGROUND AND PROCEDURAL HISTORY

Plaintiff is an inmate of the Florida penal system currently confined at Polk Correctional Institution. (Doc. 164). On December 1, 2009, plaintiff filed a *pro se* second amended civil rights complaint under 42 U.S.C. § 1983, claiming that he was denied adequate medical care for a head injury he suffered while at South Bay Correctional Facility ("South Bay"), in violation of the Eighth Amendment. (Doc. 9, pp. 5-7). As relief, plaintiff seeks compensatory and punitive damages, as well as an examination and treatment by a neurologist. (*Id*., p. 7).

On January 31, 2012, defendant Dr. Tennenbaum filed a motion for summary judgment with a statement of undisputed material facts and supporting evidence (docs. 156, 157), to which plaintiff responded (doc. 162).  On February 23, 2012, plaintiff filed a motion for summary judgment and supporting evidence (doc. 159), to which defendant Tennenbaum responded (doc. 163).  Each motion will be addressed in turn.

SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of proving that there is no genuine issue of material fact for trial.  If this burden is met, the non-moving party may not "rest on his pleadings," but must "go beyond the pleadings and by [his] own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial" in order to avoid summary judgment.  *Graham v. State Farm Mut. Ins. Co.*, 193 F.3d 1274, 1281-82 (11th Cir.1999) (internal quotations omitted).  The court must view the evidence and draw all reasonable inferences in the light most favorable to the non-moving party.  *Owens v. I.C. Sys., Inc.*, 629 F.3d 1263, 1270 (11th Cir. 2011).  The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).  A dispute is "genuine" if the "evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*, 477 U.S. at 248, 106 S. Ct. at 2510.  A fact is

"material" if it "might affect the outcome of the suit under the governing law." *Id.* The nonmoving party must show more than the existence of a "metaphysical doubt" regarding the material facts, *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986), and a "scintilla" of evidence or conclusory allegations is insufficient.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, 106 S. Ct. 2548, 2553-54, 91 L. Ed. 2d 265 (1986).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial." *Scott v. Harris*, 550 U.S. 372, 380, 127 S. Ct. 1769, 167 L. Ed. 2d 686 (2007) (internal quotation marks omitted).

The Rule 56 standard is not affected by the filing of cross-motions for summary judgment.  The court must evaluate each individual motion on its own merits, viewing the evidence in favor of the nonmoving party in each instance.  *Avocent Huntsville Corp. v. ClearCube Tech., Inc.*, 443 F. Supp. 2d 1284, 1293-94 (N.D. Ala. 2006); *see also Shaw v. Constructors v. ICF Kaiser Eng'rs, Inc.*, 395 F.3d 533, 538-39 (5th Cir. 2004) ("Cross-motions must be considered separately, as each movant bears the burden of establishing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law."); 10A CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2720 (3d ed.1998) ("The court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard.").

DEFENDANT TENNENBAUM'S MOTION FOR SUMMARY JUDGMENT

Defendant Tennenbaum seeks summary judgment on the merits of plaintiff's Eighth Amendment claim and on the ground that plaintiff failed to exhaust his

administrative remedies.  (Doc. 156).  Plaintiff's response (doc. 162) addresses the merits of plaintiff's claim, but not the exhaustion issue.

<u>Rule 56 Evidence</u>

Dr. Tennenbaum was the Chief Medical Officer of South Bay Correctional Facility ("South Bay") at times relevant to the complaint.  (Doc. 156, Tennenbaum Aff. ¶ 3).  On June 22, 2005, while plaintiff was confined at South Bay, plaintiff was hit in the head with a combination lock, causing a laceration to his head.  (Doc. 9, p. 5; Doc. 156, Tennenbaum Aff. ¶ 5 and Ex. 1, p. 5).  Registered Nurse P. Marcelin cleansed the area, sutured the laceration, and made the doctor on duty (Dr. Val) aware of plaintiff's injury.  (Doc. 9, p. 5; Doc. 156, Tennenbaum Aff. ¶ 5 and Ex. 1, p. 5).

On July 6, 2005, defendant Dr. Tennenbaum saw plaintiff for a follow-up appointment.  (Doc. 9, p. 5; Doc. 156, Tennenbaum  Aff. ¶ 6 and Ex. 1, p. 3.).  Dr. Tennenbaum noted:  (1) that the laceration healed well, (2) that Nurse Bennett removed four sutures with a sterile disposal kit without difficulty, and (3) that plaintiff tolerated the procedure well.  (Doc. 156, Tennenbaum Aff. ¶ 6 and Ex. 1, p. 3).  The scalp laceration had resolved and plaintiff had no complaints.  (Doc. 156, Tennenbaum Aff. ¶ 6).  Dr. Tennenbaum advised plaintiff to follow up with further care as needed.  (*Id*.).  The July 6, 2005 visit was the only time Dr. Tennenbaum was involved in plaintiff's care.  (Doc. 156, Tennenbaum Aff. and Ex. 1, pp. 3, 5; Doc. 159, Plaintiff's Motion for Summary Judgment ¶ 4).

On September 2, 2005, plaintiff was seen by a nurse at sick call due to plaintiff's complaints of ringing in his ears with drainage.  (Doc. 156, Tennenbaum Aff. ¶ 9 and Ex. 1, p. 2).  Licensed Practical Nurse Chiti evaluated plaintiff and found no drainage or foreign body in plaintiff's ears.  (*Id*.).  Nurse Chiti noted that

plaintiff's ears and throat appeared normal, and that his gait was steady.  (*Id.*).  Nurse Chiti provided plaintiff a pain reliever and advised him to return if his symptoms persisted.  (*Id.*).  On September 8, 2005, plaintiff received a medical examination due to an impending transfer to Charlotte Correctional Institution.  (Doc. 156, Tennenbaum Aff., Ex. 1, p. 1).  Registered Nurse McKeehan noted on the Transfer Summary form that plaintiff complained of ringing in his ears and reported that the ringing began September 2, 2005.  (*Id.*).  No other medical issues were noted.  (*Id.*).  The purpose of the Transfer Summary form is to notify the receiving institution of medical information about the inmate such as current medical problems and medications.  (Doc. 156, Tennenbaum Aff. ¶ 10 and Ex. 1, p. 1).  Plaintiff was transferred from South Bay on September 8, 2005.  (Doc. 156, Tennenbaum Aff. ¶ 10).

During plaintiff's confinement at South Bay from June to September of 2005, plaintiff did not exhibits any signs or symptoms of a closed head injury (i.e., concussion), and plaintiff did not show any signs of a neurologic deficit.  (Doc. 156, Tennenbaum Aff. ¶ 11).  Plaintiff did not complain to Dr. Tennenbaum about, or show signs of, any dizziness, headaches, or numbness.  (*Id.*).  At no time was plaintiff refused or denied treatment.  (*Id.*).

During the entire tenure of plaintiff's confinement within the Department of Corrections, plaintiff has filed a total of sixteen appeals to the Office of the Secretary. (Doc. 156, Padgham Aff. and Ex. 1).  None of plaintiff's appeals complained of the medical care plaintiff received from Dr. Tennenbaum.  (*Id.*).

Plaintiff's responsive affidavit asserts two facts.  First, plaintiff states that "while in confinement at South Bay, I declared a (Medical Emergency), when

plaintiff was coming in from 'Rec.'  Plaintiff was having dizzy spells and head-aches due to a severe head injury that plaintiff sustained due to a altercation with another inmate.   When plaintiff saw medical all that was done was he was placed on Ibuprophen [sic]."  (Doc. 162, Wilson Aff. ¶¶ 5, 6).  Second, plaintiff asserts that during his July 6, 2005 visit with Dr. Tennenbaum, plaintiff "tried to get Dr. Tennenbaum to sign a statement, about plaintiff's head-aches and dizzy spells, but was advised by Nurse Bennett it wouldn't be to the best of his interest to sign that form at that time the doctor refused to sign the statement."  (*Id*. ¶ 8).  Those are the sole allegations plaintiff offers in response to Dr. Tennenbaum's motion for summary judgment.

Application of Summary Judgment Standard to Rule 56 Evidence

      A.    Exhaustion

Title 42 U.S.C. § 1997e provides, in relevant part:  "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a). Exhaustion of all available administrative remedies is a mandatory pre-condition to suit.  *Booth v. Churner*, 532 U.S. 731, 739, 121 S. Ct. 1819, 149 L. Ed. 2d 958 (2001); *see also Porter v. Nussle*,  534 U.S. 516, 524-25, 122 S. Ct. 983, 988, 152 L. Ed. 2d 12 (2002) ("Beyond doubt, Congress enacted § 1997e(a) to reduce the quantity and improve the quality of prisoner suits; to this purpose, Congress afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case.").  The exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or

particular episodes, and whether they allege excessive force or some other wrong. *Porter*, 534 U.S. at 524, 122 S. Ct. 983. Exhaustion is required whether the plaintiff seeks declaratory and injunctive relief, monetary damages, or both. *Booth, supra* at 734, 121 S. Ct. at 1825. The requirement is not subject to waiver by a court, or futility or inadequacy exceptions. *See Booth, supra* at 741 n. 6; *McCarthy v. Madigan*, 503 U.S. 140, 112 S. Ct. 1081, 117 L. Ed. 2d 291 (1992) ("Where Congress specifically mandates, exhaustion is required."); *Alexander v. Hawk*, 159 F.3d 1321 (11th Cir. 1998). Moreover, the PLRA requires "proper exhaustion," so that the agency has an opportunity to address the issues on the merits. *Woodford v. Ngo*, 548 U.S. 81, 126 S. Ct. 2378, 2387-88, 165 L. Ed. 2d 368 (2006); *see also id.*, 126 S.Ct. at 2388 ("The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules."). A court must dismiss an action if satisfied that the plaintiff failed to properly exhaust his available administrative remedies prior to filing suit. *Higginbottom v. Carter,* 223 F.3d 1259, 1261 (11th Cir. 2000); *Alexander*, 159 F.3d at 1325-26.

The grievance procedures promulgated by the Florida Department of Corrections require an inmate to: (1) file an informal grievance with a designated prison staff member, (2) file a formal grievance with the warden's office, and then (3) submit an appeal to the Office of the Secretary. FLA. ADMIN. CODE r. 33-103.005 to 33-103.007; *see also Parzyck v. Prison Health Servs., Inc.,* 627 F.3d 1215, 1218 (11th Cir. 2010). If an inmate is filing a medical grievance, he may bypass use of an initial informal grievance and begin his medical complaint with a formal grievance

at the institution. *See* FLA. ADMIN. CODE r. 33-103.006(3)(e). This is known as a formal "Grievance of a Medical Nature." *Id.* at r. 33-103.008. If the inmate is dissatisfied with the result of the medical formal grievance, the inmate may appeal to the Office of the Secretary. *Id.* at r. 33-103.007.

The summary judgment evidence establishes beyond dispute that plaintiff did not exhaust his complaints concerning Dr. Tennenbaum's care. Accordingly, defendant Tennenbaum's motion for summary judgment should be granted and judgment entered in Tennenbaum's favor as a matter of law without further consideration of the merits of plaintiff's claims, including plaintiff's motion for summary judgment.

B.    Merits

Dr. Tennenbaum would be entitled to summary judgment even if plaintiff exhausted his claims against Tennenbaum. Plaintiff claims that Dr. Tennenbaum was deliberately indifferent to his serious medical needs when Tennenbaum denied plaintiff "an x-ray, MRI and/or neurological examination" for plaintiff's head injury. (Doc. 9, p. 5; Doc. 159, p. 2). The material undisputed facts show that Dr. Tennenbaum did not deprive plaintiff of constitutionally adequate medical care.

The government has a constitutional duty to provide minimally adequate medical care to prisoners. *Harris v. Thigpen*, 941 F.2d 1495, 1504 (11th Cir. 1991). However, not every prisoner claim of inadequate medical care states an Eighth Amendment violation. *Estelle v. Gamble*, 429 U.S. 97, 105, 97 S. Ct. 285, 291, 50 L. Ed.2 d 251 (1976). A prisoner must prove three elements in order to prevail on a medical care claim. First, the prisoner must establish "an objectively serious medical need," so grave that, "if left unattended, poses a substantial risk of serious harm."

*Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (internal quotation marks, alterations and citations omitted). "[A] serious medical need is . . . one . . . diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003) (internal quotation marks omitted). The seriousness of the deprivation of medical care is measured by the detrimental effect the deprivation brought upon the person. *Hill v. DeKalb Reg'l Youth Detention Ctr.*, 40 F.3d 1176, 1188-89 (11th Cir. 1994).

The second element requires "a subjective intent by the public officials involved to use the sufficiently serious deprivation in order to punish." *Taylor*, 221 F.3d at 1258. "[A] plaintiff must demonstrate that the public official acted with an attitude of 'deliberate indifference.'" *Id.* (quoting *Estelle v. Gamble*, 429 U.S. at 105, 97 S. Ct. at 291). Deliberate indifference is not established "unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 114 S. Ct. 1970, 1979, 128 L. Ed. 2d 56 (1994). "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence." *Farmer*, 511 U.S. at 842, 114 S. Ct. at 1983. Disregard of the risk is also a question of fact that can be shown by standard methods. *Id.* at 846.

Obviously, a complete denial of readily available treatment for a known serious medical condition violates the Constitution. *Harris v. Coweta Cnty.*, 21 F.3d 388, 393 (11th Cir. 1994). Also, medical treatment can be so slight as to amount to no

treatment at all.  Thus, the mere fact that treatment was provided does not end the inquiry.  *See  Waldrop v. Evans*, 871 F.2d 1030, 1035 (11th Cir. 1989) ("[G]rossly incompetent medical care or choice of an easier but less efficacious course of treatment can constitute deliberate indifference."); *see also Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986) ("Medical treatment that is so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness violates the eighth amendment.").  The prisoner must prove, however, that the officials' response was so inadequate as to "constitute an unnecessary and wanton infliction of pain" and was not "merely accidental inadequacy, negligence in diagnosis or treatment, or even medical malpractice actionable under state law." *Taylor*, at 1258.  Plaintiff must show that the challenged conduct was "very unreasonable in light of a known risk" of harm or suffering. *Hardin v. Hayes*, 52 F.3d 934, 939 (11th Cir. 1995) (citing *Farmer*, 114 S. Ct. at 1978-79).  Disputes regarding the level of treatment or the existence of other treatment options do not alone evidence cruel and unusual punishment. *Estelle*, 429 U.S. at 107, 97 S. Ct. at 292; *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1575 (11th Cir. 1985).  Where the inmate has received medical attention and the dispute is over the adequacy of that attention, courts should be reluctant to question the accuracy or appropriateness of the medical judgments that were made. *Harris v. Thigpen*, 941 F.2d at 1507 (quoting *Waldrop v. Evans*, 871 F.2d at 1035); *see also Woody v. Cronic*, 401 F. App'x. 509, 512 (11th Cir. 2010) ("Generally, an inmate who receives a medical diagnosis and care, but desires a different diagnosis or treatment, cannot show deliberate indifference.").  A difference of opinion over matters of medical judgment does not give rise to a constitutional claim. *Harris*, 941 F.2d at 1505;

*Waldrop* at 1033; *Murrell v. Bennett*, 615 F.2d 306, 310 n. 4 (5th Cir. 1980).  Some of the ways in which prison officials might avoid Eighth Amendment liability is to show: (1) "that they did not know of the underlying facts indicating a sufficiently substantial danger and that they were therefore unaware of a danger;" (2) that "they knew the underlying facts but believed (albeit unsoundly) that the risk to which the facts gave rise was insubstantial or nonexistent;" or (3) that "they responded reasonably to the risk, even if the harm ultimately was not averted." *Farmer*, 114 S. Ct. at 1982-83.

The final element of an Eighth Amendment claim requires the plaintiff to show that the official's deliberate indifference caused the plaintiff's injury.  *Taylor*, at 1258; *Mann v. Taser Int'l, Inc*., 588 F.3d 1291, 1306–07 (11th Cir. 2009) (reiterating the elements of an Eighth Amendment claim).

There is no genuine dispute as to any material fact in this case.  Plaintiff's only contact with defendant Tennenbaum after plaintiff's June 22, 2005 head injury was the July 6, 2005 visit.  At that time, plaintiff's head laceration was resolved.  Plaintiff did not verbalize or exhibit symptoms of an acute head injury, neurological trauma, or brain trauma warranting specialized testing or the need for evaluation by a neurologist.  Dr. Tennenbaum confirmed that plaintiff's laceration was resolved and planned for plaintiff to return to the medical department on an "as needed" basis. That was Tennenbaum's only involvement in plaintiff's care.  This care was adequate and certainly not "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *See Harris*, 941 F.2d at 1505.

Plaintiff's affidavit opposing Tennenbaum's motion for summary judgment

does not establish a genuine issue for trial.  Plaintiff asserts that sometime prior to seeing Dr. Tennenbaum on July 6, 2005, plaintiff declared a medical emergency when coming in from the recreation field because plaintiff was having dizzy spells and headaches.  (Doc. 162, Wilson Aff. ¶ 5).  Plaintiff "saw medical" and "all that was done was he was placed on Ibuprophen [sic]." (*Id.* ¶ 6).  Plaintiff's affidavit does not remotely suggest that Dr. Tennenbaum was involved in that treatment.   Further, plaintiff's second amended complaint alleges, and the summary judgment evidence demonstrates, that the incident where plaintiff declared a medical emergency when coming in from the recreation field did not occur at South Bay Correctional Facility, but rather at a different institution after plaintiff left South Bay.  (*See* Doc. 9, pp. 5-6 (plaintiff's allegation that the medical emergency occurred at Everglades Correctional Institution after plaintiff left South Bay); Doc. 156, Padgham Aff., Attach. 1, Appeal #12 (plaintiff's grievances indicating that the medical emergency occurred at Charlotte CI or Everglades CI, after plaintiff left South Bay); Doc. 156, Tennenbaum Aff., Ex. 1 (plaintiff's medical records from South Bay with no documentation of an alleged medical emergency or plaintiff reporting to medical with complaints of headaches and dizziness)).  Plaintiff has had two discovery periods in which to obtain documentation supporting his claims, and plaintiff still fails to produce evidence sufficient to establish the essential elements of a deliberate indifference claim against Dr. Tennenbaum.

Plaintiff's opposing affidavit also asserts that during the July 6, 2005 visit, Dr. Tennenbaum declined to sign a statement plaintiff prepared "about [Tennenbaum's] failure to see to plaintiff's health problems" and "about plaintiff's headaches and dizzy spells." (Doc. 162, Wilson Aff. ¶¶ 7-8).  The fact that Tennenbaum refused to

sign plaintiff's alleged statement could not lead any rational trier of fact to find that plaintiff had an objectively serious medical need or that Dr. Tennenbaum knew his treatment plan posed a substantial risk of serious harm to plaintiff's health.  Stated otherwise, Dr.  Tennenbaum's refusal to sign plaintiff's statement is not even remotely probative of any issue before the court.

In sum, plaintiff's assertions do not raise a genuine dispute over whether plaintiff had an objectively serious medical need or whether Dr. Tennenbaum knew his treatment plan posed a substantial risk of serious harm to plaintiff's health. Construing the facts in the light most favorable to plaintiff, the record lacks any evidence that Dr. Tennenbaum deprived plaintiff of constitutionally adequate medical care.  Defendant Tennenbaum is entitled to summary judgment.

## PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

Plaintiff argues that he is entitled to summary judgment on his claim that Dr. Tennenbaum provided grossly incompetent care by failing to refer plaintiff for an x-ray or MRI following plaintiff's head injury, and by "letting Nurse Bennette [sic] have contraol [sic]."  (Doc. 159, p. 2).  As evidentiary support for this assertion, plaintiff attaches a copy of his medical record from the July 6, 2005 visit, which is the same record described above.  (Doc. 159, Attach.).

As discussed previously, there is no genuine dispute about the adequacy of Dr. Tennenbaum's care. Dr. Tennenbaum evaluated plaintiff on one occasion when plaintiff had the sutures removed form his scalp.  The scalp laceration had resolved. Plaintiff expressed no complaints to Dr. Tennenbaum, and did not exhibit any signs or symptoms of a closed head injury or neurologic deficit.  Plaintiff's medical records contained no information from which Tennenbaum could reasonably infer that

plaintiff had a need for an x-ray, an MRI, or an evaluation by a neurologist.  After ensuring that the scalp laceration was resolved, Dr. Tennenbaum recommended that plaintiff return to medical "as needed."  That was the extent of Tennenbaum's involvement in plaintiff's care.  The summary judgment evidence does not establish that Dr. Tennenbaum was deliberately indifferent to a serious medical need.

CONCLUSION

The material undisputed facts show that summary judgment should be granted to defendant Dr. Tennenbaum as a matter of law, and that plaintiff is not entitled to judgment as a matter of law.

Accordingly, it is respectfully RECOMMENDED:

1.  That defendant Tennenbaum's motion for summary judgment (doc. 156) be GRANTED.

2.  That plaintiff's motion for summary judgment (doc. 159) be DENIED.

3.  That the Court enter final judgment in favor of all defendants and against plaintiff.  (*See* Docs. 129, 151,155).

4.  That the Clerk be directed to close the file.

At Pensacola, Florida this 20th day of April, 2012.

/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

<u>NOTICE TO THE PARTIES</u>

Any objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy hereof.  <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control</u>.  A copy of any objections shall be served upon any other parties.  Failure to object may limit the scope of appellate review of factual findings.  *Se*e 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).